UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States Fidelity and
Guaranty Company

    Plaintiff,

vs.

Hon.  Paul D. Borman
Case No.  07-CV-12665

National Union Fire Insurance Company of
Pittsburgh, Pennsylvania;
American International Group, Inc.;
and AIG Technical Services, Inc.

    Defendants.
_____

James E. Tamm P38154
Donald K. Warwick P44619
Attorneys for Plaintiff
4111 Andover Road, Ste. 300 East
Bloomfield Hills, MI 48302
(248) 433-2000
fax: (248) 433-2001
jetamm@odtlegal.com

Ellen B. Jannette P41800
Patrick E. Winters P62794
Attorneys for Defendants
Plunkett & Cooney, P.C.
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
(248) 594-6321
fax: (248) 901-4040
ejannette@plunkettcooney.com

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS, AMERICAN
INTERNATIONAL GROUP INC. AND AIG DOMESTIC
CLAIMS, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

Plaintiff, United States Fidelity and Guaranty Company, for its Response to Defendants, American International Group, Inc. and AIG Domestic Claims, Inc.'s Motion to Dismiss, states as follows:

    1.    No contest.

    2.    No contest.

    3.    No contest.

4. Denied, in the manner and form alleged, and Defendants are left to their proofs. The relationship between AIG, AIG Technical Services, Inc. and National Union are directly at issue in this matter.

5. Denied as untrue. The insurance policy, attached to Defendants' Motion as Exhibit B, expressly and affirmatively states that it contains "AIG Commercial Umbrella Declarations." On page two of the policy, it then references a "Commercial Umbrella Policy Form." Throughout the pendency of the underlying *Jerry Ashley vs. National Steel, Inc, et al action,* Defendants, American International Group, Inc. and AIG Technical Services, Inc., through their agents and representatives, held themselves out as the decision-making entities with respect to National Union and represented that the AIG Defendants made decisions regarding the underlying settlement posture and trial.

6. Denied as untrue. The first page of the policy states "AIG Commercial Umbrella Declarations" and page two references the "Commercial Umbrella Policy Form." The policy is unclear, on its face, as to whether it was issued by AIG or National Union.

7. Denied as untrue. Defendants AIG and AIG Technical Services, at all times, were the actual and/or ostensible decision-makers with regard to settlement decisions, using National Union as their instrumentality and serving as their alter-ego. Accordingly, both AIG and AIG Technical Services are appropriate parties to this action.

8. Denied as untrue. Defendants AIG and AIG Technical Services used National Union as their instrumentality, as serving as their alter ego and as a corporate

fiction. At all pertinent times, AIG and AIG Technical Services, through their representatives, held themselves out to all involved as the decision-makers and agents with respect to the underlying insurance policy. Accordingly, to the extent there was a parent-subsidiary relationship, it should be ignored and Defendants should be permitted to pierce the corporate veil.

9. Admitted.

For the above reasons, Plaintiff, United States Fidelity and Guaranty Company request that this Honorable Court deny Defendants' Motion and award their costs in having to respond to the Motion.

> Respectfully submitted,
>
> O'CONNOR, DeGRAZIA, TAMM & O'CONNOR, P.C.
>
> By: /S/
> James E. Tamm P38154
> Donald K. Warwick P44619
> Attorneys for Plaintiff
> 4111 Andover Road, Ste. 300 East
> Bloomfield Hills, MI 48302
> (248) 433-2000
> jetamm@odtlegal.com

Dated: August 29, 2007

3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States Fidelity and
Guaranty Company

    Plaintiff,

vs.

National Union Fire Insurance Company of
Pittsburgh, Pennsylvania;
American International Group, Inc.;
and AIG Technical Services, Inc.

    Defendants.

Hon.  Paul D. Borman
Case No.  07-CV-12665

_____

| | |
|---|---|
| James E. Tamm P38154 | Ellen B. Jannette P41800 |
| Donald K. Warwick P44619 | Patrick E. Winters P62794 |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 4111 Andover Road, Ste. 300 East | Plunkett & Cooney, P.C. |
| Bloomfield Hills, MI 48302 | 38505 Woodward Ave., Suite 2000 |
| (248) 433-2000 | Bloomfield Hills, MI 48304 |
| fax: (248) 433-2001 | (248) 594-6321 |
| jetamm@odtlegal.com | fax: (248) 901-4040 |
| | ejannette@plunkettcooney.com |

_____

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS,
AMERICAN INTERNATIONAL GROUP INC. AND AIG DOMESTIC
CLAIMS, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

### Introduction

    This lawsuit arises out of Defendants' bad faith in failing to settle an underlying liability claim within their policy limits, resulting in a jury verdict in excess of $24 million dollars. As a result of Defendants' conduct, USF&G was required to pay its policy limits of $1.5 million dollars.

    Although the Insurance Policy issued to Haas Environmental contained the name

National Union Fire Insurance Company of Pittsburgh, PA, it is also entitled, "AIG Commercial Umbrella Declarations." Throughout the underlying proceedings, AIG and AIG Technical Services, through their agents and employees, were represented to be the sole decision-makers regarding settlement. Communications regarding insurance coverage and settlement discussions all came on stationary or e-mails bearing the name AIG and AIGTS, not National Union. At the very least, the involvement of AIG and AIG Technical Services creates a genuine issue of material fact which precludes dismissal of Plaintiffs' claim against these Defendants.

## Facts

On March 17, 2003, Jerry Ashley, an employee of Haas Environmental, was crushed when a 7,000 pound steel wall fell on him while he was performing services at National Steel, resulting in serious injuries. A lawsuit was filed by Mr. Ashley in the Wayne County Circuit Court against National Steel, its employee, Scott Kissel, Haas Environmental, Johnnie Ortiz and U.S. Steel. Mr. Ashley was represented by Attorney Geoffrey Fieger and Attorney Jeffrey Danzig. At the time the case came to Trial, only National Steel and Mr. Kissel remained as Defendants.

Both Haas Environmental and National Steel had multiple insurance policies. Additionally, National Steel had a self-insured retention of $500,000. During the course of litigation, there was a dispute regarding insurance coverage provided to the various parties. National Steel filed a declaratory action regarding insurance coverage. This dispute was ultimately resolved through an agreement regarding the priority of insurance coverage. Plaintiff, USF&G issued an excess insurance policy to National Steel in the amount of $1,500,000. By agreement of the parties, the priority of insurance was as

follows:

    (1) **Greenwich Insurance Company**, Policy No. GEC11702
(Issued to Haas Environmental) . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,000,000.00

    (2) **National Union Fire Insurance Company/AIG**, Policy No. BE1398213
(Excess Insurance Policy issued to Haas Environmental) . . . . . . . $4,000,000.00

    (3) **National Steel Self Insured Retention** (Assumed by National Union Fire
Insurance Co.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $500,000.00

    (4) **USF&G/Discover Re**, Policy No. DRE559170
(Issued to National Steel) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,500,000.00

    (5) **National Union/AIG**, Policy No. BE2860076
(Issued to National Steel) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $50,000,000.00

The agreement to settle the declaratory action and establish priority layers of insurance was signed on behalf of National Union Fire Insurance Company of Pittsburgh, Pennsylvania by Shannon Ali, who is identified as its Complex Director (**See Exhibit 1 - Agreement**). Through the agreement established by the parties, National Union/AIG controlled $5.5 million dollars in insurance coverage before USF&G's $1.5 million dollar policy was exposed. Greenwich Insurance Company tendered its policy as settlement offer in June of 2004 **(See Exhibit 2 - July 30, 2004 Urbanski letter)**.

Prior to Trial, various attempts were made to resolve the claim with Mr. Ashley. The case was submitted to Case Evaluation through the Wayne County Mediation Tribunal, which resulted in an award to Plaintiff of $9 million dollars. Prior to Trial, Facilitation was also conducted by retired Wayne County Circuit Court Judge Richard Kaufman. Kevin Hendricks, counsel for National Steel, at various times made demands that National Union settle the case with Mr. Ashley (**See Exhibit 3 - Letters from Attorney Hendricks**). Despite repeated demands by National Steel and USF&G to settle the case within its policy

3

limits, Defendants refused and a verdict resulted.

All of the correspondence on behalf of National Union regarding settlement demands came from AIG Technical Services, by both Susan Shaffer, a Claim Analyst and Shannon Ali. Ms. Shaffer represented that AIG Technical Services, Inc. (AIGTS) was the claims administrator on behalf of National Union (**Exhibit 4 - 8/4/04 letter from Susan Shaffer to Kevin Hendricks**). Shannon Ali represented that he was the Claims Adjuster on the National Union Fire Insurance policy issued to National Steel while Susan Shaffer was the Adjuster on the policy issued to Haas Environmental (**Exhibit 5 - 8/3/04 letter from Shannon Ali to Kevin Hendricks**). Correspondence from both Ms. Shaffer and Mr. Ali came from AIG Technical Services and the correspondence noted that the company was a member of the American International Group (**See Exhibits 4 and 5**).

It was the understanding of USF&G that the authority to settle the case was vested in AIG and/or AIG Technical Services (**Exhibit 6 - Affidavit of Donna Urbanski**).

Significantly, Jeffrey Danzig, the attorney handling the day-to-day aspects of the underlying action on behalf of Plaintiff, was consistently advised that Shannon Ali was the Claims Representative for American International Group (**Exhibit 7 - Affidavit of Attorney Danzig**). Additionally, Mr. Danzig has affirmed that Mr. Ali consistently represented to him and to the Court that Mr. Ali was, "the person at AIG" with settlement authority (**Exhibit 7 - Affidavit of Jeffrey Danzig**). Additionally, at the hearing related to the key post-trial motions in the underlying action, which was held on 1/31/05, Counsel for Defendants, John Jacobs represented to the Court that Mr. Ali had "full policy limits authority" to resolve the case, but that he simply "chose not to spend it" (**Exhibit 8 - 1/31/05 Hearing Transcript, pp. 62-65**). Despite demands by both National Steel and USF&G, National Union, AIG and

4

AIG Technical Services refused to resolve the underlying *Ashley* action within the National Union/AIG policy limits. Because the Greenwich Insurance Policy of $1 million dollars had already been offered, the only non-AIG policy exposed by Defendants' refusal to settle was the USF&G policy of $1.5 million dollars. In the face of grievous injuries suffered by Mr. Ashley and a $9 million dollar Case Evaluation award, Defendants refused to settle the case at a demand at or around $5 million dollars, which was well within the National Union/AIG policy limits (**See Exhibit 9 - Correspondence from Susan Shaffer to Donna Urbanski dated 9/24/04).**

AIG and AIG Technical Services now seek dismissal on the grounds they are separate corporate entities, claiming that only National Union can be held responsible for bad faith. While apparently a subsidiary of AIG, it is unclear whether National Union functioned as an independent entity. While using a separate corporate name, from all accounts, National Union did not function separately from AIG and AIGTS. Not only does the policy at issue contain "AIG Commercial Umbrella Declarations" on the first page, the second page of the policy is labeled "Commercial Umbrella Policy Form." The disregard of any corporate distinction between National Union and AIG is apparent not only from the coverage documents, but from communications regarding the claim, all of which came from AIG and AIG Technical Services. Additionally, the way in which counsel retained by the Defendants referred to the insurance company suggests a single corporate entity. In correspondence to various parties, Kevin J. Gleeson, counsel retained to represent National Steel referred to "National's Umbrella Carrier, AIG...." (**Exhibit 10 - 11/29/04 letter from Attorney Gleeson).** It was noted that "AIG's representative, Shannon Ali will be coordinating bonding for the appeal." Similarly, trial monitoring, post-trial and appellate

5

counsel, John P. Jacobs referred to AIG and National Union as a single entity (**See Exhibit 11 - 12/10/04 letter from Attorney Jacobs; Exhibit 12 - 12/22/04 letter from Attorney Jacobs).** Accordingly, there remains a substantial factual dispute regarding the status of the corporate Defendants and their relationship which precludes dismissal pursuant to FRCP 12(b)(6).

Taking the factual allegations in Plaintiff's Complaint as being true, there is overwhelming evidence showing that AIG was a party to the policy and that the employees and/or agents of AIG and AIGTS were intimately and consistently the key decision-makers with regard to the bad faith failure to settle the underlying action within National Union/AIG's policy amounts.

At a minimum, Plaintiff should be permitted to pursue this theory and allowed to engage in discovery regarding the relationship between the Defendants. This action was only recently filed and the case is in the initial stages of discovery. Depositions of the representatives from National Union/AIG/AIGTS will almost certainly provide additional evidence to show whether AIG and AIGTS were "pulling the strings" in refusing to settle the underlying action in a reasonable manner.

## ARGUMENT I

**DEFENDANTS' MOTION MUST BE DENIED AS IT IS PREMATURE AND NOT SUPPORTED BY THE RECORD**

### Standard of Review

Defendants bring this Motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In their Motion, Defendants rely on matters outside of the pleadings, particularly the AIG/National Union Insurance policy issued to

Haas Environmental. Because the Motion relies on matters outside the pleading, it is appropriately considered under Rule 56, and not Rule 12(b)(6). The Rule specifically provides:

> If, on a motion asserting the defense numbered 6 dismiss for failure of the pleadings to state a claim upon which relief may be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. ***Barrett v. Harrington,* 130 F 3d 246, 536 Cir. 1997.**

Under Rule 56(c), Summary Judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" the moving party bears the burden of showing the absence of a genuine issue of material fact. ***Celotex Corp v. Catrett,* 477 U.S. 317, 373; 106 S. Ct. 2548, 91 L. Ed. 2d. 265 (1986);** ***United States v. Miami University,* 294 F. 3d. 797, 805 (6th Cir. 2002).**

Once the moving party has sustained its burden of proof, the burden then shifts to the non-moving party to establish a genuine issue of material fact does indeed exist. ***Janda v. Riley-Meg Industries,* 764 F. Supp. 1223, 1227 (Ed. Mich. 1991).** A "material fact" exists if there is "a dispute over facts that might effect the outcome of the suit." ***Goscicki v. Custom Brass & Copper Specialties, Inc.,* 229 F. Supp. 2d. 743, 746 (Ed. Mich. 2002),** citing ***Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248; 106 S. Ct. 2505, 95 L. Ed. 2d. 202 (1986).**

At the summary judgment stage, the facts must be viewed in the light most favorable to the non-moving party. ***Scott v. Harris,* ____ U.S. ____, 127 S. Ct. 1769; 167 L. Ed. 2d.

7

**686 (2007).** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 587; 106 S. Ct. 1348; 89 L. Ed. 2d. 538 (1986).**

Under notice pleading standards, courts should be reluctant to dismiss colorable claims which have not had the benefit of factual discovery. *Evans-Marshall v Bd. Of Educ. Of Tipp City Exempted,* 428 F. 3d. 223 (6th Cir., 2005).

### AN ISSUE OF FACT EXISTS REGARDING THE RELATIONSHIP BETWEEN THE CORPORATE DEFENDANTS

USF&G's principal claim is for bad faith. It has long been recognized under Michigan law that where an insured is motivated by its own selfish purpose or a desire to protect its interests at the expense of its insured, a claim may exist for bad faith. *Commercial Union Ins. Co. v. Liberty Mutual Ins.,* 426 Mich. 127; 393 N.W. 2d. 161 (1986); *City of Wakefield v. Globe Indemnity,* 246 Mich. 645; 225 N.W. 2d. 643 (1929). Contrary to the suggestion made by Defendants, a bad faith claim is not based solely on a contract theory. The Michigan Supreme Court defined bad faith as "arbitrary, reckless, indifferent or intentional disregard of the interests of the person owed a duty." *Commercial Union, supra* at 138. The *Commercial Union* panel noted that it was an equitable subrogation action and the Court then went on to set forth a number of factors for the fact-finder to take into account to determine if bad faith exists. The Michigan Supreme Court's opinion in *Commercial Union,* does not support the assertion in Defendants' Motion that Plaintiff's cause of action can only be based upon a supposed breach of the terms and conditions of the National Union policy.

Indeed, a claim for subrogation, such as in *Commercial Union* and in this action, is premised upon "an equitable doctrine depending on no contract or privity, and proper to

8

apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by the other." ***Ameriquest Mortgage Co. v. Alton,* 273 Mich. App. 84, 97; 731 N.W. 2d. 99 (2006).**

Defendants owed a duty to USF&G because it stands in the shoes of National Steel. ***Eller v. Metro Industrial Contracting,* 261 Mich. App. 569; 683 N.W. 2d. 242 (2004).** Because Defendants acted arbitrarily, recklessly, indifferently and with intentional disregard of the interests owed to National Steel, by failing to settle the claim for a reasonable amount prior to the high verdict, Defendants acted in bad faith.

What is unclear is the nature of the corporate relationship between National Union Fire Insurance of Pittsburgh, PA, AIG and AIG Technical Services. While it is generally true that courts will respect a principle of separate corporate entities, there are also circumstances where this distinction may be appropriately disregarded. Among the circumstances where courts have looked beyond a parent-subsidiary relationship is where the subsidiary becomes a mere instrumentality of the parent. ***Sesword v. Hilti Inc.,* 449 Mich. 542, 548; 537 N.W. 2d. 221, 224 (1995).** When a subsidiary is merely an "instrumentality" or is the "alter-ego" for the parent, it is appropriate to pierce the corporate veil. In applying this doctrine, courts are concerned with reality and not form. ***DeWitt Truck Brokers v. Ray Fleming Fruit Co.,* 540 F. 2d. 681, 685 (1976).** Among the factors which warrant the disregard of the corporate structure are whether a defendant had "substantial, if not exclusive control over" the subsidiary, that the directors were "nothing more than figureheads" who attended no director's meeting and were paid no salaries, and where there were no "minutes of stockholder meetings." ***GM Leasing Corp. v. United States,* 514 F. 2d. 935, 939 (1975).** In this case, there is ample evidence that the

9

corporate distinction between American International Group Inc., AIG Technical Services and National Union Fire Insurance Company was sufficiently blurred or absent to allow imposition of liability against the moving Defendants. In establishing the priority of payment under the various insurance policies, Shannon Ali, an employee of AIG, signed on behalf of National Union as Defendant's "Complex Director" yet signed correspondence on letterhead of AIG Technical Services. **(Exhibit 1)**. Counsel retained to represent National Steel also referred to "AIG National Union" as a single entity. **(Exhibits 10 and 11).** At this early stage of the case, further discovery will almost certainly prove that the Defendants acted as a single entity in their bad faith dealings. The full extent of this relationship between AIG, AIGTS and National Union needs to be explored.

Because there are numerous questions of fact regarding the nature of the relationship between AIG, AIG Technical Services Inc. and National Union, Summary Dismissal as to the claims against AIG and AIG Technical Services, Inc. under Fed. R. Civ. Pro. 12(b) and 56(c) is inappropriate.

Wherefore, Plaintiff requests this Honorable Court deny Defendant's Motion.

    Respectfully submitted,

    O'CONNOR, DeGRAZIA, TAMM & O'CONNOR, P.C.

By: /S/ _____
    James E. Tamm P38154
    Donald K. Warwick P44619
    Attorneys for Plaintiff
    4111 Andover Road, Ste. 300 East
    Bloomfield Hills, MI 48302
    (248) 433-2000
    jetamm@odtlegal.com

Dated: August 29, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2007, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to counsel for Defendant and I hereby certify that I have mailed by United States Postal Service the Paper(s) to the following non-ECF participants: None

/s/Rebecca Richardson (rmrichardson@odtlegal.com)
O'Connor, DeGrazia, Tamm & O'Connor, P.C.
4111 Andover Road, Ste. 300 East
Bloomfield Hills, MI 48302
(248) 433-2000