**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES FIDELITY &
GUARANTY CO.,

                Plaintiff,                    CASE NO. 07-CV-12665

-vs-                                       PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA;
AMERICAN INTERNATIONAL GROUP,
INC.; and AIG TECHNICAL SERVICES,
INC.,

                Defendants.
_____/

## **OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

     Before the Court is a July 27, 2007 Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants American International Group, Inc. ("AIG") and American International Technical Services, Inc. ("AIGTS") (collectively "Defendants"). (Doc. No. 8). Plaintiff United States Fidelity and Guaranty Company ("Plaintiff") filed a Response on August 29, 2007. The Court held a motion hearing on October 4, 2007. Having considered the entire record, and for the reasons that follow, the Court presently DENIES Defendants' Motion to Dismiss and ORDERS that Plaintiff have sixty (60) days for discovery on the parent-subsidiary issue involved in this case.

1

## I. BACKGROUND

This case arises out of Plaintiff's allegations that Defendants National Union Fire Insurance Company of Pittsburgh ("NUFIC"), AIG, and AIGTS acted in bad faith in the parties' negotiation of a settlement in connection with a state court negligence case.

Plaintiff is a Maryland corporation and has its principal place of business in Minnesota. (Def. Removal ¶ 6). Plaintiff provided an excess insurance policy to National Steel Corporation in the amount of $1,500,00.00, in excess of a $500,000 self-insured retention maintained by National Steel. (Am. Compl. ¶ 1).[1]

NUFIC is a Pennsylvania corporation and has its principal place of business in New York. (Def. Removal ¶ 7). Plaintiff alleges that NUFIC is a subsidiary of AIG. (Am. Compl. ¶¶ 2-3). AIG is Delaware corporation with its principal place of business in New York. (Def. Removal ¶ 8). Plaintiff further states that AIGTS, a Delaware corporation, is in the business of loss adjustment and is a subsidiary or agent of AIG and/or NUFIC. (Am. Compl. ¶¶ 9-11).

Plaintiff alleges that AIG, through its subsidiary NUFIC, provided insurance coverage to National Steel, and Haas Environmental Services, Inc. (Am. Compl. ¶ 5). Haas, a New Jersey corporation, performed services for National Steel at the latter's Wayne County, MI facility. (*Id.*). Plaintiff contends that AIG, through its subsidiary NUFIC, provided: (1) an umbrella insurance policy to Haas in the amount of $4,000,000; and (2) an excess insurance policy to National Steel in the amount of $50,000,000. (Am. Compl. ¶¶ 6-7).

On March 17, 2003, Jerry Ashley, an employee of Haas, was seriously injured when a 7,000-pound steel wall fell on him while he was performing services at National Steel. (Am.

---

[1] Plaintiff styles its state court Amended Complaint as a "First Amended Complaint."

Compl. ¶¶ 14-15). Ashley subsequently filed a lawsuit in Wayne County Circuit Court, alleging negligence against defendants Scott Kissel, Haas, Johnny Ortiz, and National Steel. (Am. Compl. ¶¶ 8, 14-15); *Ashley v. Nat'l Steel, Inc., et al.*, No. 03-316563-NO.

Haas had an agreement with National Steel that Haas would indemnify National Steel for any and all claims that might arise out of or relate to Haas' activities at National Steel's Wayne County facility. (Am. Compl. ¶ 16). After the lawsuit was filed in Wayne County Circuit Court, National Steel tendered its defense to Haas. (Am. Compl. ¶ 17).

At that time, Haas had two relevant insurance policies in effect: (1) a primary insurance policy issued by Greenwich Insurance Company in the amount of $1,000,000; and (2) an umbrella policy issued by NUFIC in the amount of $4,000,000. (*Id.*).

National Steel had the following insurance coverage: (1) a self-insured retention by National Steel in the amount of $500,000; (2) an excess insurance policy with Plaintiff in the amount of $1,500,000; and (3) an excess insurance policy with NUFIC in the amount of $50,000,000. (Am. Compl. ¶¶ 18-19).

The parties attempted to negotiate a settlement throughout the litigation, but were unsuccessful. (Am. Compl. ¶ 21). Plaintiff alleges that the settlement negotiations were stymied by NUFIC's refusal to acknowledge its responsibility to provide the $4,000,000 in umbrella coverage to Haas. (Am. Compl. ¶ 22).

On or about July 13, 2004, the underlying case proceeded to evaluation. The case evaluation awarded Ashley the amount of $9,000,000. (Am. Compl. ¶ 23). All parties rejected the case evaluation award. (Am. Compl. ¶ 24).

On or about July 20, 2004, the case was facilitated by former Wayne County Circuit

Court Judge Richard Kaufman. (Am. Compl. ¶ 25). Judge Kaufman placed a value on the case between $3,000,000 and $6,000,000. (Am. Compl. ¶ 26).

Subsequent to the facilitation conference, the parties agreed to, and reduced to writing, the priority of insurance coverage in the case:

1. Greenwich Policy issued to Haas ($1,000,000)
2. NUFIC Excess Policy issued to Haas ($4,000,000)
3. National Steel Self-Insured Retention ($500,000)
4. USF&G (Plaintiff) Excess Policy issued to National Steel ($1,500,000)
5. NUFIC Umbrella Policy issued to National Steel ($50,000,000)

(Am. Compl. ¶¶ 27-28).

Plaintiff alleges that NUFIC refused to offer a settlement amount in the case above $3,000,000; although per Plaintiff, a settlement in the range of $3,000,000 to $5,000,000 would have been reasonable given the facts of the case. (Am. Compl. ¶¶ 29-31).

The case proceeded to trial in Wayne County Circuit Court. On October 14, 2004, a jury returned a verdict of $24,780,000 for Ashley. (Am. Compl. ¶ 32).

Greenwich paid its $1,000,000 policy limit shortly after the jury verdict. (Am. Compl. ¶ 33).

On November 12, 2004, the state court judge reduced the jury verdict to $14,562.863 to reflect the reduction to present value. (Am. Compl. ¶ 34).

In February 2006, the parties reached a settlement agreement, disposing of the claims in the *Ashley* case, in the amount of $7,400,000, to be paid in the following order:

1. $1,000,000 by NUFIC
2. $1,500,000 by Plaintiff (USF&G)
3. $1,100,000 by NUFIC
4. $3,800,000 by NUFIC

4

On June 15, 2007, Plaintiff, as equitable subrogee for National Steel and Haas, filed a lawsuit in Wayne County Circuit Court against Defendants NUFIC, AIG, and AIGTS, alleging that Defendants acted in bad faith in their attempts to negotiate and to settle the underlying *Ashley* case. (Am. Compl. ¶¶ 37-38). Plaintiff alleges that the underlying lawsuit could have been settled at, or prior to, trial for $5,000,000 or less, but Defendants failed to acknowledge their responsibilities under their policies and failed to act in good faith. (Am. Compl. ¶¶ 39-40).

As a result of the jury verdict, Plaintiff contends that it had to pay $1,500,000 to Ashley. Plaintiff alleges that if Defendants had negotiated the settlement in good faith for the proposed $5,000,000, then that amount would have come out of the Greenwich primary policy, the NUFIC excess policy, and possibly National Steel's self-insured retention. (Am. Compl. ¶¶ 44-45).

On June 22, 2007, Defendants removed the case to this Court on the basis of diversity jurisdiction.

On July 27, 2007, Defendants AIG and AIGTS filed a motion to dismiss pursuant to Rule 12(b)(6). AIG and AIGTS contend that: (1) they are not proper parties to this lawsuit, since the underlying insurance policy was issued by NUFIC to Haas; and (2) that Plaintiff has not plead a viable parent-subsidiary claim against AIG/AIGTS.

Plaintiff contends that Defendants' motion is either premature or should be treated as a summary judgment motion under Rule 56(c), since the motion relies on "matters outside the pleadings."

## II. ANALYSIS

The Supreme Court has recently explained the standards for a Rule 12(b)(6) motion:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the

5

> defendant fair notice of what the . . . . claim is and the grounds upon which it rests," While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and footnote omitted).

In their motion, Defendants attach a copy of the NUFIC insurance policy with Haas in support of their contention that AIG and AIGTS are not parties to the contract. (Def. Br. Ex. B). Furthermore, AIG and AIGTS proffer the defense that Plaintiff has failed to plead properly parent-subsidiary liability under Michigan law, relying upon *Seasword v. Hilti, Inc.*, 449 Mich. 542 (1995).

Initially, the Court determines that the inclusion of the insurance policy between Haas and NUFIC are not "matters outside the pleadings" in this instance for the purposes of Defendants' Rule 12(b)(6) motion. The Sixth Circuit has held:

> Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim. . . ." In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations omitted).

In this case, the insurance policy between Haas and NUFIC is referred to in Plaintiff's Complaint. Furthermore, the attached insurance policy forms a basis of the instant suit. Therefore, the Court finds that it can properly consider the insurance policy for the purposes of Defendants' Rule 12(b)(6) motion.

The insurance contract itself contains several references to AIG that supports limited reasonable discovery on the corporate relationship between NUFIC and AIG. First, the heading on the first page of the insurance policy reads: "AIG Commercial Umbrella Declarations." (Def. Br. Ex. B, at 2). Second, at the bottom of "Endorsement 5," the document reads "© 1999 American International Group, Inc." (*Id*. at 23). Third, the corporate addresses for both NUFIC and AIGTS are the same New York City address. (*Id*. at 26). Finally, the document containing the address and phone number directory for "approved crisis management firms" contains a heading reading "AIG Excess Casualty." (*Id*. at 27).

The Court permits Plaintiff sixty (60) days to complete reasonable discovery on any parent-subsidiary issues among NUFIC, AIG, and AIGTS. If at the end of discovery, Plaintiff is unable to present facts supporting a parent-subsidiary claim, Defendants AIG and AIGTS may file a summary judgment motion on those claims.[2]

---

[2] Defendants further suggest that Michigan law requires that Plaintiff's Complaint plead facts to specifically support a parent-subsidiary liability to withstand dismissal.

The United States Court of Appeals for the Sixth Circuit has recently summarized Michigan law pertaining to "piercing the corporate veil" between parent and subsidiary corporations:

> Under Michigan law, there is a presumption that the corporate form will be respected. "This presumption, often called the 'corporate veil,' may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some overriding public policy.'" Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere

7

instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss. The propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven.

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798-99 (6th Cir. 2007) (internal citations omitted).

Defendants point to the following passage in the Michigan Supreme Court case *Seasword* to support their argument that since Plaintiff has failed to allege parent-subsidiary liability, the Complaint should be dismissed:

> While plaintiff's pleadings lack any indicia of a parent-subsidiary theory of liability, plaintiff did disclose that theory in response to the defendant's motion for summary disposition and the trial court considered it. Specifically, in opposition to summary disposition, plaintiff alleged that Hilti, Inc., was a subsidiary of Hilti A.G., the admitted manufacturer. Accepting that allegation as true, plaintiff has not stated a claim based on a parent-subsidiary relationship because plaintiff *has alleged no facts, nor offered any proof* that defendant and Hilti A.G. have abused their presumably separate and distinct corporate forms. Absent such *allegations or facts*, plaintiff has failed to state a valid claim of parent-subsidiary liability.

*Seasword*, 449 Mich. at 548-49 (emphases added).

Upon review of the *Seasword* decision, the Court finds that the case does not support Defendants' argument that failure to plead parent-subsidiary liability requires dismissal at this stage of the proceedings.

In *Seasword*, the plaintiff was injured by a drill that bore a plate exhibiting the defendant's (Hilti, Inc.) name and address. *Id.* at 543-44. Also imprinted on the drill was the name "HILTI" and "Made in Liechtenstein." Hilti A.G., the manufacturer of the drill, was not made a defendant in the case. *Id.* at 544. The plaintiff filed a lawsuit, asserting several theories of liability, including "piercing the corporate veil" between Hilti, Inc. and Hilti A.G. *Id.* The defendant subsequently filed a motion for summary disposition, and the trial court granted the defendant's motion. *Id.* at 545.

The Michigan Court of Appeals affirmed the trial court's grant of summary disposition on the parent-subsidiary theory of liability:

> We agree with defendant that summary disposition was appropriate on plaintiff's theory that defendant was liable as a subsidiary corporation for the drill's alleged design or manufacture flaws. Included with defendant's motion for summary disposition was an affidavit from defendant's in-house counsel that swore that

## III. CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **DENIES** Defendants' Motion to Dismiss; and

(2) **ORDERS** that Plaintiff have sixty (60) days in which to complete limited discovery pertaining to the parent-subsidiary liability issue.

**SO ORDERED.**


                                             **s/Paul D. Borman**
                                             **PAUL D. BORMAN**
                                             **UNITED STATES DISTRICT JUDGE**

**Dated: October 10, 2007**

### CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 10, 2007.**

                                             **s/Denise Goodine**
                                             **Case Manager**

---

       defendant and Hilton A.G. were distinct and separate entities. Plaintiff failed to produce any evidence to rebut this averment.

*Seasword v. Hilti, Inc.*, Nos. 119456 & 120839, slip op. 1 (Mich. Ct. App. June 11, 1992) (unpublished). The Michigan Supreme Court subsequently affirmed this holding. *Seasword*, 449 Mich. at 548-59.

       In the *Seasword* case, the Michigan courts held that the plaintiff was unable to produce evidence to substantiate its allegations of parent-subsidiary liability in opposition to the defendant's affidavit. However, it is clear that the Michigan courts evaluated the defendant's motion under a summary judgment standard, permitting matters outside the pleadings to be introduced on the parent-subsidiary issue. In the instant case, the Court has ordered limited discovery to permit Plaintiff to discover and to present facts supporting a parent-subsidiary liability theory.